Our next case on our call, agenda number 11, number 128824. People of the State of Illinois v. Gene Fukama-Kabika. How's that? Good morning, your honors. My name is Catherine Oberer, and I represent the appellant in today's case, Mr. Jean Fukama-Kabika. Today, Mr. Fukama-Kabika is asking this court to vacate the circuit court's order changing and increasing his mandatory supervised release term to three years to life because the court lacks jurisdiction to enter that order. Under typical rules, circuit courts only have 30 days after entering a final judgment to change it, and we are well past that point here. The sentencing occurred in 2017. The change occurred in 2019. Now, Rule 472 does provide exceptions to that general rule, but not for mandatory supervised release terms. We know that because the rule doesn't mention mandatory supervised release terms at all in its plain language. The rule does state that circuit courts have jurisdiction to correct clerical errors, but what happened here was not a clerical error. It doesn't fit within the definition of a clerical error in the rule itself. Rule 472 specifically states that circuit courts retain jurisdiction to correct clerical errors in the written sentencing order, resulting in a discrepancy between the record and the actual judgment of the court. Here, the actual judgment of the court was a three-year mandatory supervised release term. The term that was put in the written sentencing order titled judgment to the Department of Corrections and signed by the judge. Nor does the change that happened here fit within the popularly understood definition of a clerical error. Dictionaries define clerical errors as minor mistakes or inadvertencies, and the change that happened here was not minor. Mr. Fukamakabika's sentence was increased from a term-of-year MSR term, a three-year term, to up to a life term, a three-year-to-life term. Counsel, how do you reconcile your position with Round v. Lamb? Yes, Round v. Lamb does not control for two different reasons. One is the procedural posture of the cases are very different. In Round v. Lamb, this court was asked to order an immediate release of a person from the Department of Corrections via either an order of habeas or a writ of mandamus. We don't have those requests here in this case. What is at issue here is whether the circuit court's order was properly entered when it ordered that three-year mandatory supervised release term, and whether it had jurisdiction to do so. The second reason that this case is different is because specifically of the circuit court's orders. In this case of sentencing, the court ordered a three-year mandatory supervised release term. In Round v. Lamb, it didn't order one. This court stated that the term wasn't included in the written sentencing order, and it wasn't mentioned at sentencing, and that's a requirement by our legislature by statute that the court order a term in the written sentencing order. So in Round v. Lamb, this court was considering what the failure to comply with that statutory order was, and that's just not the case here because we do have an ordered mandatory supervised release term at the time of sentencing. Counsel, this is not a case about what the defendant knew or didn't know, correct, that he had made some decisions in this case under the misunderstanding as to what the potential sentence was. That's not your argument. And, of course, he actually was advised prior to the jury trial, this jury coming out, that the sentencing, including the MSR, was three to life. So this is not about what the defendant understood the sentence to be, correct? It's a jurisdiction question. I guess I disagree that this case doesn't involve what Mr. Ferdot-McKeegan knew. There were actually three different admonishments prior to trial about what the possible mandatory supervised release term could be. He was initially told that the term would be two years. He was later told that it could be up to life. And then he was told again for the third time that, Your Honor, I believe mentioned that it could be three years to life. All of that were separate admonishments, all by the court, all to Mr. Kamakabika before trial. And then after he was found guilty, when we proceed to sentencing and it's the time for the judge to determine what the sentence is, they determined it would be a three-year term in the written sentencing order. Yes? Counsel, is that MSR term prescribed? Isn't that a part of the legal sentencing scheme for this particular crime? I'm sorry, could you repeat your question? Was the MSR prescribed by law? There are statutory requirements for MSRs, yes. So does that make a difference, you know, considering the judge did admonish the defendant at some point previously and this is prescribed by law, does that make a difference as to whether it's a clerical error or not? No. Why not? Well, the sentence that is ordered is a judicial determination. So determining what the term would be is something that's done if there is a finding of guilty at the time of sentencing. And there was a determination of what mandatory supervised release should be at the time of sentencing here. That determination was three years. That's what the judge decided after giving him three different admonishments as to what the term could be. This Court's precedent has stated that judges are supposed to determine and order sentences. It's not a clerical decision. It's something for the judge. No, I'm not saying it's a clerical decision. I am saying what about the argument that it was just a mistake, a scrivener's error, so to speak, that the term was not written when the judge entered the sentence. He didn't add to life, three years to life. We don't have any evidence of that here. The legislature has required by statute that the judge put the mandatory supervised release term in the written sentencing order. Is there any case in which the judge would leave a word out and you would consider that to be a scrivener's error? If this isn't a scrivener's error, what do you think it is? A changing of the misdue for comment could be the sentence without jurisdiction. What occurred here is the Court ordered a term of year, mandatory supervised release term, and then years later increased that to up to life. That's not just the omission of a word. It's not a scrivener's error. And the legislature states in Section, excuse me, Chapter 730, Act 5, Chapter 5, Article 8, Section 1D, that the judge is to make the determination of what the mandatory supervised release should be in the written sentencing order. You only order three years. Counsel, does the sentencing scheme in the statute give the trial judge in this case any discretion in that term? You said that this was a prescribed mandatory supervised release. This was a prescribed term through the life. Would the judge have had any discretion? No, they are to determine and order the sentence. And this was a prescribed? This is not something that the judge had the authority at the time of sentencing to give less than that prescribed term? There is a statutory required term to your right. That's not unlike other sentencing requirements. There's mandatory minimum sentences. There's mandatory consecutive sentences. But the judge still has to determine and order it at the time of sentencing. That does bring me to one of the points in the briefs, if I may. This court actually used to have a rule called the void sentencing rule, which stated that sentences that didn't comply with the statute could be changed and corrected at any time. This court abolished that unanimously in the case of People v. Castleberry. The issue there was whether a 15-year firearm enhancement could be added to a person's sentence that was required by statute. The state had asked for it. The circuit court decided not to impose it. And this court was asked to do so under that void sentencing rule because the sentence didn't comply with the statute. And this court got rid of that rule unanimously. The issue here is what we're supposed to do when the circuit court later after it did determine a sentence, whether that complied with statute or not, whether the court's allowed to change that term, specifically whether Rule 472 allows it to do so. And it does not. And a reading of the rule in that way would be resurrecting the void sentencing rule that this court abolished in Castleberry. There's no indication in the plain language of Rule 472 that it intended to do so. It doesn't mention the void sentencing rule. It doesn't mention Castleberry. It doesn't mention statutorily unauthorized sentences. That's just not something the circuit court has jurisdiction to correct and change at any time. It's not a scrivener's error. It's not a clerical error. It's a change and an increase in a person's sentence. As I mentioned before, the term that was ordered at sentencing in 2017 was three years. Any interpretation that some other different term, some unspoken term was instead ordered is legally incorrect. The court's supposed to order sentences. It's a judicial determination for mandatory supervised release terms. They're supposed to put the term in the sentencing order. The court put a term in the sentencing order. That was three years. Interpreting Rule 72 as that to be something as a scrivener's error, something as a clerical error, that a sentence was something different than what the judge entered and wrote down and signed, something unspoken would just be unworkable. This court should not interpret Rule 472 in a way that makes it unworkable and in a way that makes it unclear to anyone what their sentence actually is. And it need not do so. If someone believes that a sentence doesn't comply with the statute, as Your Honors have requested, there's already a remedy. There's already a vehicle that parties can seek. That's to seek a writ of mandamus. That procedure has value. It would ensure that there weren't some sort of problems about what Mr. Fukamika knew or didn't know. In this case, it requires a person to file a writ and to give notice to the other party. Mr. Fukamika didn't get that here when his term was changed. It would allow him to have objections to a request to change his sentence and increase it up to lifetime control of the Department of Corrections. He didn't have that opportunity here. And that procedure does have value. We're not at that stage.  It's a question of jurisdiction. The Circuit Court didn't have jurisdiction in 2019 to change and increase Mr. Fukamika's MSR term to three years for life. So that order is void, and this Court should vacate it. We have no other questions. We thank you for your time, and we reserve time for rebuttal. Thank you. Thank you very much. Counsel Ratley? Good morning, Your Honors. May it please the Court and Counsel. I am Assistant Attorney General Elda Malamud on behalf of the people of the State of Illinois. This Court should affirm because the Circuit Court retained jurisdiction under Rule 472 to correct the erroneous MSR term in a written sentencing order. I'd like to start by addressing a fundamental misconception of how the MSR statute works that underlies Petitioner's arguments here. Now, Petitioner argues that he was sentenced to a three-year MSR term, but that's not the case, and it's not the way MSR works. As Your Honors have indicated via questioning, MSR is a nondiscretionary term that is included as a matter of law as part of the present sentence. There's nothing the judge can do about it. Moreover, there's nothing the judge needs to do about it, and that is why Round v. Lamb is controlling, Your Honor. So in that case, the Petitioner there was sentenced for violating an order of protection, and that sentence automatically carried a four-year MSR term. The trial judge did not mention the four-year MSR term during sentencing, and the written sentencing order did not mention that MSR term either. And then, but subsequently, the defendant recognized that the Department of Corrections was going to enforce this four-year MSR term that was a part of the sentence as a matter of law, and sought immediate release from this court. And this court said, you're not entitled to immediate release because that sentence is a part of the MSR term, is a part of the sentence as a matter of law. And so the fact that there was nothing that the judge could do, and by not including it in the MSR, in the written sentencing order,  by pronouncing the prison sentence, the judge automatically included the MSR term as part of Petitioner, the defendant in that case's sentence. And so the MSR term in this case was part of the sentence automatically as a part of the actual judgment. And that brings us to the second error that underlies Petitioner's arguments here. And that is that the written sentencing order constituted the judgment, or somehow indicated that the Petitioner had been sentenced to three years. But the actual judgment is the pronouncement in open court of the sentence. That's clear from this court's decision in Allen. That's clear from the statutes. And so the actual judgment was the oral pronouncement. And then it was the job of either the clerk or the assistant state's attorney to correctly then render the judgment into the written sentencing order. And so that included, of course, putting the correct number of years. And it also included putting the correct MSR term. Now, in this case, there was an error in that ministerial function of putting the statutorily mandated term, that three-year-to-life term, into the written sentencing order. But that did not occur. As Your Honor mentioned, that can be a scrivener's error, whether we call it a ministerial task or a clerical task. It was simply a task of converting what was in the statute onto the written sentencing order. And that written sentencing order had no independent effect and is simply designed to help the Department of Corrections have the correct information on what is used as the minutes. Counsel, what about this argument that I guess it's a notice issue. The proper course of action would have been to seek a writ of mandamus. Therefore, the defendant would have notice. What about that argument? Well, first of all, Your Honor, there is a notice provision in this rule. So notice is to be given to the parties, to the defendants. So we don't need mandamus to – Well, let's stop right there, though. The rule does say notice to the parties and upon a motion of the court of the parties. That didn't happen. Well, it's not clear, Your Honor, from the record whether notice was given or not. That wasn't an issue that's been – Let's be honest. There's nothing in the record that shows that he had notice. Well, that's right, Your Honor. So in that sense, it's unclear. It wasn't an issue raised by a petitioner. And so that if there had been, for instance, a hearing on the day that the non-pertunct order was issued, that might not have been sent to the appellate court as part of the record because the notice wasn't an issue. But that's true, Your Honor, that we don't know from the record that notice was given. And there was no actual motion. There was no motion. There was no motion, yeah. The court can do it on its own motion. But there's nothing on the record. There's no motion on the record from the courts. But the claim, Your Honor – We're talking about procedurally how this works. And is mandamus – should that have been the rule since it didn't clearly follow this rule? Well, no, Your Honor. So, for instance, even if – if Your Honors correctly determine that there's jurisdiction under Rule 472A.4, that motion can still be filed now. That motion could be filed at any time. So there would be no reason to file a mandamus even if this court were to somehow find that what happened here didn't – So is it – you know, this all happened as a result of a letter from somebody in the Department of Corrections, isn't that right? That's correct, Your Honor. So is that the procedure for this kind of thing happening? Somebody in IDOC writes a letter to the judge and then something happens and nobody else gets notice of it? Well, if there's a clerical error, Your Honor, then under Rule 472, that can be addressed by motion of the court or by either party. But with a motion, you know, just basic motion practice, don't you have to give some notice to the other party that something is going to happen? Well, again, yes, Your Honor. Rule 472 does include a notice requirement. But the claim here isn't that there was some procedural error and that because of that – I'm just trying to get from you when is it okay to follow the procedural rules or if it's – that's somewhat of a slippery slope. You know, this particular case sounds like you're saying, well, this wasn't so important because it was a scrutiny error. So it was okay that somebody sent a letter and then that was enough. And that's – I'm just questioning whether that is enough. Well, no, Your Honor, I'm not saying in any form that the procedures don't need to be followed, that they shouldn't – that the court or either party shouldn't follow the notice procedures as outlined in the rule. That, of course, is what should be done. But the question in this case isn't that. The question is whether the court had jurisdiction under Rule 472 to address this kind of clerical error. And the answer to that is yes. If Petitioner wanted to raise a claim that somehow the procedures of Rule 472 were followed, Petitioner could have done so. If Petitioner – and had that been the case, we could have looked at that. We could have looked at whether that indeed was the case, what would be the proper remedy in that case, and go from there. But that's not the issue. The issue, and the only issue, is whether 472 provides a jurisdiction for the court to address this kind of claim. And the answer to that is yes. And the answer is that this court specifically referred this kind of case to the Rules Committee so that a writ of mandamus wouldn't have to be filed, that we could address this kind of error, this kind of clerical error or scrivener's error, via this, not via a mandamus action, which would have to be granted because there's no discretion, as Petitioner admits. So mandamus would be granted. But instead of going through that whole procedure, we address that through this rule, Rule 472. Thank you. So unless the court has any other questions, we would ask this court to affirm the judgment.  Thank you, counsel. Rebella? I first wanted to clarify how mandatory supervisory release works now, according to statute. There used to be a provision in the statute, as I mentioned earlier, 730 ILCS Act 5, Chapter 5, Article 8. The MSR terms used to be included as a matter of law. They're not anymore. The legislature amended that, effective January 1, 2012. And it states that the judge is supposed to enter a mandatory supervised release term. It states that the term shall be written as part of the sentencing order. So that is a judge's job. This court has stated that in other rules, that it's the judge's job to determine and order a sentence. It's in Rule 452. It's in People v. Moran that it's a judicial determination what a sentence should be. But, counsel, can't that cut the other way? Can't it be that if this is clearly the judge's job, and the judge, assuming the judge knows what his or her job is, and that part is left out, can't it be it could cut the other way and say, and establish that that was, in fact, a clerical or scrivener's error? Couldn't it be interpreted that way? Possibly in general, but on this case, because there were three different admonishments about what the mandatory supervised release term should be. What difference would that make? That's what the court believes the terms could be. Two years, or up to life, or three years to life. And then when it gets to the sentencing, it's the judge's job to determine what the sentence should be. And it determines three years. That's what it wrote down and put in the sentencing order that it signed in this case. That's what the record is in this case. It's the court's job. And the state's suggestion that there was some other person that did the court's job for it is just not supported by the record in this case. Did the trial judge handwrite the order? No, it's signed by the judge. So somebody typed it up? Yes, it's a typed document with a handwritten signature. The three-year term that the judge signed was what it ordered. It didn't have jurisdiction to change that term later in 2019. Rule 472 doesn't allow it. As Your Honor mentioned, the judge didn't even invoke or follow Rule 472. There is no indication that the rule itself intends to allow changes to mandatory supervised release terms because it doesn't mention them. It's not at all in the plain language of the rule. It's just not something that was included in this particular rule. And it doesn't fit within the definition of a clerical error either for the reasons that I've mentioned. So there's no jurisdiction to change Mr. Furkama-Kabika's mandatory supervised relief term to up to life, to three years to life. This court should vacate that void order. Thank you for your time. Thank you very much. This is agenda number 11, number 128, 824, People of the State of Illinois, Mr. John Furkama-Kabika. This case will be taken under advisement.